IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:24-CV-369-D

| | |
|---|---|
| WALTER DOBUCKI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **ORDER** |
| | ) |
| AMERICAN RESIDENTIAL SERVICES, | ) |
| LLC, | ) |
| | ) |
| Defendant. | ) |

On May 20, 2024, Walter Dobucki ("Dobucki" or "plaintiff") filed an action against American Residential Services, LLC ("ARS" or "defendant") in Wake County Superior Court [D.E. 1-3]. On June 28, 2024, ARS removed the action to this court [D.E. 1]. On July 22, 2024, ARS moved to dismiss the complaint [D.E. 8] and filed a memorandum in support [D.E. 10]. On August 9, 2024, Dobucki amended his complaint. See Am. Compl. [D.E. 12]. Accordingly, the court dismisses as moot ARS's motion to dismiss the complaint [D.E. 8].

In his amended complaint, Dobucki alleges: (1) violations of the Americans with Disabilities Act, as amended ("ADA") (count one); (2) retaliation in violation of the ADA (count two); (3) retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII") (count three); (4) wrongful discharge under North Carolina law (count four); (5) libel per se under North Carolina Law (count five); and (6) a violation of the North Carolina Wage and Hour Act (count six). See Am. Compl. ¶¶ 52–93.

On August 23, 2024, ARS moved to dismiss the amended complaint [D.E. 13] and filed a memorandum in support [D.E. 14]. On September 20, 2024, Dobucki voluntarily dismissed count four [D.E. 16]. That same day, Dobucki responded to ARS's motion to dismiss [D.E. 17]. On

October 4, 2024, ARS replied [D.E. 18]. As explained below, the court grants defendant's motion to dismiss in part, dismisses Dobucki's federal claims, declines to exercise supplemental jurisdiction over Dobucki's state-law claims, and remands the action to Wake County Superior Court.

I.

Dobucki worked for ARS as a Master Plumber for over 10 years. See Am. Compl. ¶ 16. On January 31, 2023, Dobucki sustained an injury in ARS's parking lot. See id. at ¶ 18. As a result, Dobucki suffers from spinal stenosis, bulging discs, whiplash, and bone spurs. See id. at ¶ 19. In spring 2023, Dobucki complained to ARS's Human Resources Department about an ARS manager who led ARS staff in a Christian prayer during a company lunch. See id. at ¶¶ 21–24. ARS Human Resources spoke to the manager who later announced his anger at Dobucki's complaint during a company-wide meeting. See id. at 24–26.

In September and October 2023, Dobucki submitted an ADA accommodation request to ARS for the injury he sustained in ARS's parking lot on January 31, 2023. See id. at ¶ 27. Dobucki offers conflicting statements about whether ARS approved some of these requests. Compare id. at ¶¶ 29–32, 44 with id. at ¶ 43. Sometime after Dobucki submitted his ADA accommodation request, ARS reassigned Dobucki's jobs and customers to other ARS employees. See id. at ¶ 40(a).

On November 2, 2023, Dobucki complained to Logan Ferralez ("Ferralez"), ARS's Human Resources Compliance Manager, that someone forged Dobucki's signature on a permit application for a water heater. See id. at ¶¶ 34–36. Dobucki also complained to Ferralez about how ARS handled Dobucki's ADA accommodation request. See id. at ¶¶ 37–39.

In November 2023, Dobucki did not receive a promotion that his supervisor allegedly promised him. See id. at ¶ 40(b). On November 28, 2023, Dobucki "discovered he was shorted

2

two weeks of commissions for the two prior weeks." Id. at ¶ 41. On December 14, 2023, Dobucki "was again not given his commissions for the prior two weeks." Id. at ¶ 42.

On January 3, 2024, Dobucki filed an EEOC charge. See [D.E. 12-1] 1. Dobucki's EEOC charge alleges age discrimination,[1] ADA discrimination, religious discrimination, and retaliation but offers scant details in support of each. See [D.E. 12-1] 1–2.[2] Specifically, Dobucki's EEOC charge alleges only that Dobucki complained about an employee email which stated, "thank God we made our numbers." [D.E. 12-1] 1. After complaining about the email, Dobucki claims ARS demoted him from Plumbing Sales Manager to Field Supervisor. See id. On January 19, 2024, ARS fired Dobucki. See Am. Compl. ¶ 47. On February 21, 2024, the EEOC issued Dobucki a right-to-sue notice. See [D.E. 12-2] 1.

Shortly after being fired, Newcomb and Company hired Dobucki. See id. ¶¶ 49–50; [D.E. 14-2] 2; [D.E. 14-3] 2. ARS sent letters to Dobucki and to Newcomb and Company, advising both of Dobucki's employee confidentiality and non-solicitation agreements with ARS. See [D.E. 14-2] 2; [D.E. 14-3] 2–3. ARS also advised Dobucki that "in the event" he was "in possession of ARS Confidential Information," ARS demanded its return by April 15, 2024. See [D.E. 14-3] 2. Dobucki maintains that these letters were an "attempt to further harass him and damage his current employment [with Newcomb and Company]." Am. Compl. ¶ 50. Dobucki denies ever possessing ARS confidential information. See id. at ¶ 51.

---

[1] Dobucki's EEOC charge contains no facts to support his age discrimination allegation, and he does not assert an age discrimination claim in his complaint or amended complaint.

[2] The court can take judicial notice of public records and documents attached to a complaint or motion to dismiss without converting a motion to dismiss into a motion for summary judgment. See Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cty. Mem. Hosp., 572 F.3d 176, 180 (4th Cir. 2009). The court also can consider documents that are integral to and explicitly relied on in the complaint. See Occupy Columbia v. Haley, 738 F.3d 107, 117 n.7 (4th Cir. 2013).

3

In its motion to dismiss, ARS argues: (1) Dobucki failed to exhaust his administrative remedies for his Title VII and ADA claims; (2) Dobucki failed to timely raise his Title VII retaliation claim; (3) Dobucki fails to plausibly allege wrongful discharge under North Carolina law; and (4) Dobucki failed to plausibly allege libel per se under North Carolina law. See [D.E. 13] 1–2. The court need not consider ARS's argument about the wrongful discharge claim because Dobucki voluntarily dismissed that claim.

II.

ARS argues Dobucki's failure to raise ADA and Title VII discrimination and retaliation claims in his EEOC charge bars Dobucki from pursuing those claims in this action. See [D.E. 14] 8–10. Before a person may file a claim in court under Title VII or the ADA, the person must file a charge of discrimination with the EEOC. See 42 U.S.C. § 2000e–5(f)(1).[3] An EEOC charge suffices "only if it is sufficiently precise to identify the parties, and to describe generally the action or practices complained of." Chacko v. Patuxent Inst., 429 F.3d 505, 508 (4th Cir. 2005) (quotation omitted); see Miles v. Dell, Inc., 429 F.3d 480, 491–92 (4th Cir. 2005). Moreover, the content of the EEOC charge determines the scope of plaintiff's right to maintain an ADA or Title VII claim in court. See, e.g., Hentosh v. Old Dominion Univ., 767 F.3d 413, 416–17 (4th Cir. 2014), abrogated on other grounds by Fort Bend Cnty. v. Davis, 587 U.S. 541 (2019); Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 132–33 (4th Cir. 2002). "Only those discrimination claims

---

[3] The ADA incorporates the administrative enforcement provisions of Title VII, including the requirement that a person exhaust his administrative remedies by filing a charge with the EEOC concerning the alleged discrimination before suing in federal court. See 42 U.S.C. §§ 2000e-5(e)(1), 12117(a); Sydnor v. Fairfax Cty., 681 F.3d 591, 593 (4th Cir. 2012); Thiessen v. Stewart–Haas Racing, LLC, 311 F. Supp. 3d 739, 743 (E.D.N.C. 2018); cf. Cowgill v. First Data Techs., Inc., 41 F.4th 370, 383–84 (4th Cir. 2022) (applying the exhaustion requirement to an ADA retaliation claim).

4

stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir. 1996); see Sydnor, 681 F.3d at 593–94; Miles, 429 F.3d at 491–92; Bryant, 288 F.3d at 132–33. "Thus, a claim in formal litigation will generally be barred if the EEOC charge alleges discrimination on one basis, such as race, and the formal litigation claim alleges discrimination on a separate basis, such as sex." Jones v. Calvert Grp., Ltd., 551 F.3d 297, 300 (4th Cir. 2009), abrogated on other grounds by Davis, 547 U.S. 541 (2019); see Bonds v. Leavitt, 629 F.3d 369, 379 (4th Cir. 2011). The same principle applies to a plaintiff who files an EEOC charge with respect to one adverse employment action (such as a failure to promote), but then seeks to expand the formal litigation claim to a separate adverse employment action (such as a termination). See Bonds, 629 F.3d at 379–80; Jones, 551 F.3d at 300; Miles, 429 F.3d at 491–92; Chacko, 429 F.3d at 509; Bryant, 288 F.3d at 132–33; Evans, 80 F.3d at 963. The rationale behind these principles concerning the scope of an EEOC charge concerns providing fair notice to an employer about a charge and permitting the EEOC to investigate and (if appropriate) resolve the dispute without a lawsuit. See, e.g., Chacko, 429 F.3d at 508–09, 513; Miles, 429 F.3d at 491.

Dobucki's EEOC charge alleges age discrimination, ADA discrimination, religious discrimination, and retaliation but offers scant details in support of each. See [D.E. 12-1] 1–2. Dobucki's EEOC charge alleges only that Dobucki complained about an employee email which stated, "thank God we made our numbers." [D.E. 12-1] 1. After complaining about the email, Dobucki claims ARS demoted him from Plumbing Sales Manager to Field Supervisor. See id. Dobucki's EEOC charge does not state to whom Dobucki complained. On February 21, 2024, the EEOC issued Dobucki a right-to-sue notice. See [D.E. 12-2] 1.

Dobucki's amended complaint asserts claims for ADA violations, ADA retaliation, and Title VII retaliation. See Am. Compl. ¶¶ 52–93. Dobucki's EEOC charge describes complaining about religious language in a colleague's email and ARS subsequently demoting Dobucki. See id. Dobucki's amended complaint, however, mentions neither the "thank God we made our numbers" email included in Dobucki's EEOC charge nor Dobucki's demotion. Instead, Dobucki's amended complaint contains new allegations about ARS firing Dobucki after he complained about prayer during a company lunch and ARS's delay in approving his ADA requests. See Am. Compl. ¶¶ 21–26, 34–49; see also id. at ¶¶ 52–78. Thus, Dobucki's EEOC charge contains a charge for one adverse employment action (demotion), but his amended complaint seeks to expand the formal litigation claim to a separate adverse employment action (termination). Accordingly, Dobucki failed to exhaust his administrative remedies for his retaliation claim, and the court grants defendant's motion to dismiss count three of the amended complaint. See Bonds, 629 F.3d at 379–80; Jones, 551 F.3d at 300; Miles, 429 F.3d at 491–92; Chacko, 429 F.3d at 509; Bryant, 288 F.3d at 132–33; Evans, 80 F.3d at 963.

As for counts one and two, Dobucki's EEOC charge does not contain sufficient information to support the ADA claims asserted in his amended complaint. Dobucki's EEOC charge states merely that Dobucki believed he was "being discriminated [sic] because of [his] . . . disabilities in violation of the American with Disabilities Act of 1990," without providing any factual support. [D.E. 14-1] 2. Notably, the ADA accommodation-related conduct alleged in the amended complaint does not appear within Dobucki's EEOC charge. Thus, Dobucki failed to exhaust his administrative remedies for these ADA claims, and the court grants defendant's motion to dismiss counts one and two. See Evans, 80 F.3d at 963; Sydnor, 681 F.3d at 593–94; Miles, 429 F.3d at 491–92; Bryant, 288 F.3d at 132–33.

6

## III.

The court has jurisdiction under 28 U.S.C. § 1331 over the federal claims. The court has supplemental jurisdiction under 28 U.S.C. § 1367 over the two remaining state-law claims.

A court may decline to exercise supplemental jurisdiction over a state-law claim when (1) "the claim raises a novel or complex issue of State law;" (2) "the claim substantially predominates over" the federal claim or claims; (3) the court has "dismissed all claims over which it has original jurisdiction;" or (4) other "exceptional circumstances" present "compelling reasons for declining jurisdiction." 28 U.S.C. §§ 1367(c)(1)–(4). Additionally, a court may decline to exercise supplemental jurisdiction when "values of economy, convenience, fairness, and comity" make retaining jurisdiction inappropriate. Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 351 (1988), superseded on other grounds by 28 U.S.C. § 1447(c); see Royal Canin U. S. A., Inc. v. Wullschleger, No. 23-677, 2025 WL 96212, at *5 (U.S. Jan. 15, 2025); Hinson v. Norwest Fin. S.C., Inc., 239 F.3d 611, 616–17 (4th Cir. 2001); Shanaghan v. Cahill, 58 F.3d 106, 109–10 (4th Cir. 1995).

The court has dismissed Dobucki's federal claims. "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." Carnegie-Mellon, 484 U.S. at 350 n.7; see Royal Canin U. S. A., Inc., 2025 WL 96212 at *5; Shanaghan, 58 F.3d at 110. Accordingly, the court declines to exercise supplemental jurisdiction over plaintiff's two remaining state-law claims and remands those claims to Wake County Superior Court. See Royal Canin U. S. A., Inc., 2025 WL 96212 at *5; Carnegie-Mellon, 484 U.S. at 350 n.7.

IV.

In sum, the court DISMISSES AS MOOT defendant's first motion to dismiss [D.E. 8], GRANTS IN PART defendant's second motion to dismiss [D.E. 13], DISMISSES WITHOUT PREJUDICE as unexhausted plaintiff's federal claims, DECLINES to exercise supplemental jurisdiction over plaintiff's two remaining state-law claims, and REMANDS the action to Wake County Superior Court.

SO ORDERED. This 17 day of January, 2025.

JAMES C. DEVER III
United States District Judge

8